# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Charles Redman,**
**Petitioner Below, Petitioner**

**FILED**

August 31, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0894** (Berkeley County 12-C-2)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Charles Redman, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Berkeley County's August 11, 2014, order denying his amended petition for writ of habeas corpus. Respondent David Ballard, Warden, by counsel Cheryl K. Saville, filed a response. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying him habeas relief because the trial court erred in denying his motion to suppress certain evidence, committed additional errors in his underlying trial that rendered his recidivist conviction unconstitutional, and in finding that it was bound to sentence petitioner to life imprisonment pursuant to West Virginia Code § 61-11-18.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2009, petitioner was indicted on one felony count of malicious assault after he stabbed James Jordan, the father of his then-girlfriend's children. Prior to trial, petitioner moved to suppress evidence obtained from bags located at his girlfriend's apartment. The circuit court held a suppression hearing in June of 2009 and granted petitioner relief, in part, by suppressing evidence from one bag but allowing into evidence two knives discovered in a bag under the kitchen sink. Following trial, the jury found petitioner guilty of the lesser included offense of unlawful wounding. Thereafter, the State timely filed a recidivist information that alleged petitioner had twice previously been convicted of offenses for which a penalty of longer than one year could be imposed. In September of 2009, the circuit court held petitioner's recidivist trial. Ultimately, the jury found petitioner was the same individual who was previously convicted of the other crimes. The circuit court then sentenced petitioner to life imprisonment, with mercy. Petitioner appealed his conviction to this Court, and we refused the same by order entered in November of 2010.

In January of 2012, petitioner filed a *pro se* petition for writ of habeas corpus in the

1

circuit court. The circuit court then appointed petitioner counsel. In January of 2014, petitioner's counsel filed an amended petition for writ of habeas corpus. Thereafter, the State filed a response to which petitioner replied. Without holding an omnibus evidentiary hearing, the circuit court entered an order denying the amended petition. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal to this Court, petitioner reasserts his claims that the trial court committed several errors, including an error in denying his motion to suppress, refusing to give a proposed jury instruction on uncorroborated victim testimony, denying his motion for judgement of acquittal, and in finding it was bound to sentence petitioner to life imprisonment pursuant to West Virginia Code § 61-11-18. The Court, however, does not agree. Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on these alleged errors, which were also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's August 11, 2014, "Final Order Denying Petition For Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** August 31, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

2

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE ex rel. CHARLES REDMAN,
    Petitioner,

v.                            Case No. 12-C-2

DAVID BALLARD, Warden,
Mt. Olive Correctional Center,
    Respondent.

## FINAL ORDER DENYING PETITION FOR HABEAS CORPUS

On this 8th day of August, 2014, this matter came before the Court pursuant to a Petition for Writ of Habeas Corpus ad Subjiciendum filed by the Petitioner, Charles Redman, by counsel Ben Crawley-Woods, Esq., and a Return to and Motion to Dismiss said Petition filed by the Respondent Warden, by counsel, Cheryl K. Saville, Assistant Prosecuting Attorney. Upon review of the papers and proceedings herein, review of the underlying criminal case State v. Charles Redman, Berkeley County Case Number 09-F-53, and review of pertinent legal authorities, the Court hereby **DENIES** the Petition.

## FINDINGS OF FACT

1. The Petitioner was indicted by a Berkeley County Grand Jury for one felony count of Malicious Assault in February of 2009. Indictment, 2/19/09; State v. Charles Redman, Case No.: 09-F-53.

2. The facts underlying the Petitioner's charge were that he stabbed James Jordan, the father of Petitioner's then girlfriend, Belinda Riley's, children.

3. Prior to trial, the Petitioner moved to suppress evidence obtained from a pair of bags located at the apartment of Ms. Riley. Memorandum in Support of Defendant's Motion to Suppress Fruits of Illegal Search and Seizure, 6/12/09. A suppression hearing was conducted on June 15, 2009. Tr., 6/15/09. The trial court ultimately suppressed the evidence obtained

1

from the bag in the bedroom but allowed the admission of two knives that were discovered in the bag under the kitchen sink. Id.

4. Also at the pretrial hearing on June 15, 2009, the trial court advised the Petitioner of his right to testify or not testify pursuant to State v. Neuman, 179 W.Va. 580, 371 S.E.2d 77 (1988). Id. at 65.

5. A trial by jury began on June 16, 2009. Tr. 6/16/09.

6. James Jordan testified that on July 13, 2008, he was staying a Belinda Riley's residence at 300A Race Street in Martinsburg, Berkeley County, West Virginia. Tr. 6/16/09, 66. Mr. Jordan stated that the Petitioner had one time stayed at the apartment; however, he had moved out. Id. at 83. Mr. Jordan indicated that the Petitioner still visited the apartment, however. Id. Mr. Jordan testified that he had been sleeping in his son's bedroom and woke up during the night to use the restroom. Id. at 67. As Mr. Jordan was walking toward the bathroom, he observed the Petitioner and Ms. Riley engaged in sexual conduct. Id. Mr. Jordan then decided to leave. Id. at 68. Mr. Jordan testified that Ms. Riley exited the residence behind him and stated that she wanted her things back. Id. Mr. Jordan threw a stack of Ms. Riley's CDs, which were in his car, on the ground and then bent her food stamp card and handed that to her. Id. at 69. During this time, Mr. Jordan also slammed his car door shut, kicked his car many times, and, in fact, was unable to close the door to his car because he bent the hinges. Id. at 69-70, 98. Mr. Jordan then began walking away from the apartment. Id. at 71. Mr. Jordan testified that he turned back around and was confronted by the Petitioner. Id. The Petitioner stabbed Mr. Jordan and told Mr. Jordan that he had it coming. Id. Mr. Jordan testified that after the stabbing, he kicked the Petitioner and the Petitioner knocked Mr. Jordan to the ground. Id. at 71-72. Mr. Jordan then ran on foot to the

2

Martinsburg City Police Station to seek help and report that the Petitioner had stabbed him. Id. at 72-73. Mr. Jordan's wound was not life threatening but required thirteen to sixteen stitches. Id. at 80.

7. Ms. Riley testified that Mr. Jordan was staying at her apartment on and off at the time of the incident and that the Petitioner lived down the block a little ways but would visit her at her apartment. Id. at 116. Ms. Riley stated that she and the Petitioner were talking when Mr. Jordan woke and got angry because Mr. Jordan believed that they were being intimate. Id. at 117. Ms. Riley testified that she and Mr. Jordan got into an argument and went outside. Id. at 118. She stated that Mr. Jordan began throwing her CDs. Id. Ms. Riley further testified that Mr. Jordan kicked his car, knocked his mirrors off, and swung the door of the vehicle open so hard that it damaged the vehicle. Id. Ms. Riley stated that she observed the Petitioner make contact with Mr. Jordan but believed that the Petitioner had just hit him. Id. at 119. Ms. Riley stated that Mr. Jordan then ran away and she heard him say that he was bleeding. Id.

8. Patrolman Jones testified that he was on duty on July 13, 2008, and was at the Martinsburg City Police Station when Mr. Jordan arrived there. Id. at 123-124. Patrolman Jones testified that Mr. Jordan was bleeding, there was blood running down one side of his arm and a pool of blood formed on the floor. Id. at 124. He further stated that there was a trail of blood that spanned approximately two blocks to the police station from the original scene. Id. at 126. Patrolman Jones testified that Mr. Jordan stated that he was stabbed by the Petitioner and that it happened on the 300 block of West Race Street. Id. at 124. After medics arrived at the station and began treating Mr. Jordan, Patrolman Jones and other officers responded to the 300 block of West Race Street. Id. at 125. Patrolman

3

Jones testified that when he arrived on scene, he observed both the Petitioner and Ms. Riley standing outside. Id. He further testified that he spoke with Ms. Riley while Patrolman Luciano and Corporal Phelps spoke to the Petitioner. Id. at 127-128. Ms. Riley asked Patrolman Jones to move to a different location to speak with him because she was afraid that the Petitioner would see her talking to the officer. Id. at 127. Ms. Riley then took Patrolman Jones inside the residence and showed him where the Petitioner's belongings were. Id. at 129. Ms. Riley told Patrolman Jones that the Petitioner did not live there but that he visited and had a couple of bags there. Id. Patrolman Jones testified that he found two knives in one of the Petitioner's bags. Id. There was no visible sign of blood on either of the knives, and they were not sent to the lab. Id. at 132.

9. Patrolman Luciano testified that he was on duty on July 13, 2008, and responded to the Martinsburg City Police Station for a reported stabbing. Id. at 133. Patrolman Luciano went to the scene where the stabbing allegedly occurred along with some other officers. Id. at 134. Patrolman Luciano testified that the Petitioner asked the officers what they were looking for and what they needed. Id. at 135. They responded that they were there for a disturbance and asked the Petitioner if he knew what was going on. Id. The Petitioner told them that he had just gotten there and did not know. Id.

10. Corporal Phelps testified that he was on duty on July 13, 2008, and responded to the Martinsburg City Police Station for the report of a stab victim in the lobby. Id. at 136-137. When Corporal Phelps arrived at the Station, Mr. Jordan had already been transported to the hospital. Id. at 137. Corporal Phelps testified that he then responded to the 300 block of West Race Street where the stabbing was alleged to have taken place. Id. Corporal Phelps testified that he spoke to the Petitioner and asked him

4

what was going on; the Petitioner said he had just gotten into the area and that hadn't done anything wrong. Id. at 138. Corporal Phelps further testified that the area showed signs of a struggle; there were CDs strewn in the area and a moderate amount of blood spatter on the ground in certain areas. Id. Corporal Phelps then recounted for the jury that he retraced the blood trail which began in the 300 block of North Maple Avenue, went down West Race Street and led into the back parking lot of the police department, up the back entrance, and into the police department. Id. at 138-139.

11. Officer Spiker testified that she was on duty on July 13, 2008, and responded to the Martinsburg City Police Department where Mr. Jordan was waiting in the lobby. Id. at 1401. Once Mr. Jordan was taken by the medics, Officer Spiker reported to the hospital in order to speak further with Mr. Jordan and to obtain a formal written statement and photographs. Id. at 141. Officer Spiker then testified to taking pictures of Mr. Jordan's stab wounds. Id. at 141-142.

12. The State then rested. Id. at 143.

13. The Petitioner moved for a verdict of acquittal, which was denied. Id. at 144-146.

14. The Petitioner was informed of his right to testify or not testify pursuant to State v. Neuman, 179 W.Va. 580, 371 S.E.2d 77 (1988), and the Petitioner elected not to testify. Id. at 146-148.

15. The Defense rested. Id. at 148, 153.

16. Next, the State objected to the Defense jury instruction No. 2, a care and caution instruction regarding a victim's uncorroborated testimony. Id. at 148. The Court found that there was corroborating evidence in Ms. Riley's testimony that the Petitioner

5

made contact with Mr. Jordan and that combined with a puncture wound was sufficient corroborating evidence. Thus, the Court excised the corroboration portion of the instruction. Id. at 150.

17. The Jury Charge was finalized and the jury was instructed by the court. Id. at 148-172.

18. The State and the defense then both gave their closing arguments and the case was sent to the jury. Id. at 172-191.

19. The jury found the Petitioner guilty of the lesser included offense of Unlawful Wounding. Id. at 195; Order of Conviction upon a Trial by Jury, 6/23/09.

20. Due to the Petitioner's prior criminal history, the State timely filed a recidivist Information, alleging that the Petitioner was twice previously convicted of offenses for which a penalty of longer than one year could be imposed. Information, 8/6/09.[1]

21. The parties met for a pretrial hearing on the sentencing recidivist trial on September 28, 2009.

22. The defense first argued proportionality. The trial court found that the court has no discretion in sentencing under the recidivist statute because the statutory language clearly mandates sentencing using the word "shall." The Petitioner's first felony conviction was for Unlawful Assault in 1987. His second conviction was Felony Possession of a Firearm; and the third was felony Unlawful Assault. The trial court found that the two Unlawful Assaults convictions were crimes of violence. The court denied the Petitioner's proportionality argument. Tr. 9/28/09, 3-7.

---

[1] The State sought to prove that the Petitioner was the same individual previously convicted in 87-F-34 and 3:01-CR-14.

6

23. The Petitioner objected to the State's intention to move the admission of both the conviction and sentencing orders in the 1987 case. The State argued that the second predicate offense in a recidivist trial must occur after conviction and sentencing in the first predicate offense. The trial court ruled the date of sentencing to be relevant and overruled the Petitioner's objections. Id. at 16-18.

24. The Petitioner's counsel also argued that the felon in possession of a firearm offense was based on an offense that the Petitioner believes was invalid. Id. at 17

25. The Court found that this was a collateral attack on a prior conviction which is prohibited in a recidivist trial. Furthermore, as of the time of the pretrial, that conviction had never been disturbed. Id. at 26-28. Thus, the Court found that there was no reason to continue the recidivist trial and denied the Petitioner's motion to continue. Pre-trial Order, 10/6/09; Tr. 9/28/09, 29.

26. The trial for this recidivist Information began on September 29, 2009.

27. Thomas Gaither testified that he was formerly a Martinsburg City Police Officer. Tr., 9/29/09, 71. Mr. Gaither signed a fingerprint card dated May 5, 1987, which contained the Petitioner's name and the charge of Unlawful Wounding. Id. at 73-75.

28. Donald Hayes testified that he was a Martinsburg City Police officer from 1973-2001. Mr. Hayes was involved in the arrest of the Petitioner in Magistrate Court.Case No. 00-F-663.[2] Mr. Hayes described the situation leading to the Petitioner's arrest as follows: he was sent to execute a search warrant at a residence; the Petitioner was standing on the front porch and everyone on the porch was ordered to get down; Mr. Hayes was still in the cruiser at this point, he was riding shotgun and was facing the porch; Mr. Hayes saw

---

[2] 00-F-663 was later removed to Circuit Court under 01-F-24, which was later dismissed in state court and ultimately was brought in Federal Court.

7

the Petitioner jump off the porch, run through the yard, and try to get away. Mr. Hayes advised Sergeant McMillian, who was driving the cruiser, to proceed down the street to stop the Petitioner; they pulled the cruiser up such that the Petitioner was running right toward Mr. Hayes and Mr. Hayes saw the Petitioner take a gun from his waistband and with his right hand throw it in the bushes; the Petitioner then got to the fence (Mr. Hayes was on the other side) and they struggled; Mr., Hayes was able to slow the Petitioner enough for other officers who were chasing him through the yard to take him to the ground and place him under arrest. Mr. Hayes clearly saw the person that was arrested that day. Mr. Hayes identified the person in open court as Charles Redman, the Petitioner. Mr. Hayes previously testified for the United States in federal court as to this incident. Id. at 77-84. The State then offered certified documents from the federal court case (conviction order and sentencing order). The Petitioner objected and stated that these records reference sentencing which is not relevant, all that is needed is the order of conviction. The trial court overruled the objection. Id. at 80.

29. Detective Lieutenant Swartwood testified that he was also one of the officers involved with the arrest of the Petitioner in Case no. 00-F-663. Detective Swartwood was the officer that obtained the warrant, but was not present when the Petitioner was taken into custody. However, Detective Swartwood did see the Petitioner as he pulled up to the property to execute the search warrant and did see him after he was taken into custody. Detective Swartwood identified the Petitioner in open court as the person he saw as he pulled up to the residence and right after he was arrested. Id. at 86. Detective Swartwood was also able to authenticate a mug shot photograph of the Petitioner showing the arrest date of November 16, 2000. Id. at 87-88. Detective Swartwood was asked by the defense whether he was familiar with

another individual by the name of Charles Freddy Redman. Detective Swartwood responded that there is a striking difference between that Charles Redman and the Petitioner. Id. at 89.

30. Deputy U.S. Marshal Mike Ulrich was the next witness for the State. Id. at 91. Mr. Ulrich was a U.S. Marshal back in 2001 and processed the Petitioner on the federal charge of felon in possession of a firearm on July 3, 2001. Id. at 93. Mr. Redman was already incarcerated at the Eastern Regional Jail. A warrant was issued in June of 2001 by the ATF. The Petitioner was brought in and Mr. Ulrich booked him in on July 3, 2001. Id. at 93. Mr. Ulrich authenticated a fingerprint card and identified the Petitioner in open court as the individual whose fingerprints he took on July 3, 2001.

31. Suellen Wyatt, deputy clerk for the circuit clerk's office, was the next witness for the State. Id. at 106. Ms. Wyatt testified that the clerk's office maintains records of convictions in Berkeley County. Id. at 107. Ms. Wyatt introduced a felony conviction order for unlawful assault dated September 22, 1987. These documents were admitted over Petitioner's objection. Ms. Wyatt also presented documents in case No. 01-F-24. These documents deal with a firearm charge against the Petitioner that was dismissed in state court and ultimately went to federal court. Id. at 113-114. The dismissal was filed July 9, 2001. Id. at 115. Ms. Wyatt also presented a copy of the conviction order for case 09-F-53, the most recent unlawful wounding case conviction used in the recidivist post-conviction proceeding. These documents were admitted into evidence without objection. Id. at 115-116.

32. Candy Murphy, deputy clerk for the court, was the next witness to testify for the State. Id. at 123-124. Ms. Murphy presented a criminal complaint in magistrate court case number 08-F-937, which became the circuit court malicious wounding case of which the

9

Petitioner was convicted, 09-F-53. These documents referenced Petitioner's date of birth and social security number. Id.

33. The State moved admission of the docketing of the Petitioner's federal conviction in 3:01-CR-14, showing his arrest on July 3, 2001. The Petitioner again objected, citing the same arguments made at pretrial. The Court overruled the objection, finding that the docket sheet would tie in to the issue of identity. Id. at 129-130.

34. The next witness for the state was Patrolman Luciano. Patrolman Luciano was on duty on July 13, 2008, and was involved with the arrest of the Petitioner. Patrolman Luciano identified the Petitioner as the person he arrested. Id. at 131-132. Luciano also testified to processing the Petitioner on the arrest and obtaining his fingerprints. The fingerprint card was signed by Petitioner. Id. at 132.

35. The next witness for the State was Steve King, supervisor of the latent print section of the West Virginia State Police Forensic Laboratory. Id. at 136. Mr. King is. Mr. King was qualified as an expert in fingerprint identification. Id. at 138. Mr. King examined three sets of fingerprints from a Charles Redman, the most recent from the Martinsburg Police Department on July 13, 2008, the next from the arrest of Charles Redman by the U.S. Marshal on July 3, 2001, and one from the arrest of Charles Redman for unlawful wounding taken by the Martinsburg City Police Department on May 5, 1987. Mr. King opined that the fingerprints were all made by the same individual. Id. at 143-145.

36. The State then rested. Id. at 148.

37. Petitioner's counsel then asked the trial court to consider a Rule 29 motion

10

pursuant to the Rules of Criminal Procedure for a judgment of acquittal. Id. However, the court ruled that the State provided ample evidence that the Petitioner is the same individual that was previously convicted in 87-F-34 and 3:01-CR-14, and denied the motion.

38. The court conducted the Neuman dialog with the Petitioner, and the Petitioner advised that he did not wish to testify. Id. at 150-151.

39. The Petitioner moved the court to give a collateral act cautionary instruction, particularly concerning Mr. Ulrich's testimony regarding a prior weapons conviction. The court denied the Petitioner's motion for such cautionary instruction reasoning that such evidence did not constitute evidence of collateral acts but simply went to the element of identity which was required in the prosecution. Id. at 152-157.

40. The parties made their closing arguments and then the jury deliberated, ultimately finding the Petitioner to be the same person twice before convicted in case numbers 87-F-34 and 3:01-CR-14, Recidivist Conviction Order, 10/6/09 ; Tr. 9/29/09.

41. On October 26, 2009, the matter came on for consideration of post-trial motions, wherein the Petitioner renewed all issues brought up during trial, which were again denied. The trial court then imposed the statutory life sentence, with parole eligibility in fifteen years. Sentencing Order, 11/10/09.

42. The Petitioner filed a timely Notice of Intent to Appeal his conviction and sentence to the West Virginia Supreme Court of Appeals. Notice of Intent to Appeal, 10/30/09.

43. The Petitioner perfected his appeal to the West Virginia Supreme Court. Petitioner for Appeal of Charles E. Redman from the Judgment of the Circuit Court of Berkeley County, WV, of the Order Entered November 10, 2009, 5/10/10.

11

44. The State filed a timely response to the Petition for Appeal. Order of Refusal dated November 22, 2010, State v. Charles Redman, No. 101069, 12/1/10.

45. The West Virginia Supreme Court of Appeals refused the Petition for Appeal. Id.

46. The Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court. Letter from Clerk, 3/3/11.

47. The Petition for Writ of Certiorari was denied. Letter from Clerk, 3/28/11.

48. The Petitioner filed a *pro se* Petition for Writ of Habeas Corpus. Petition for Writ of Habeas Corpus, 1/3/12.

49. The court appointed counsel to assist in the filing of an amended petition and Losh list. Order Appointing Counsel, Directing Counsel for Petitioner to File an Amended Petition, and Directing Petitioner to Complete Losh List, 1/20/12.

50. The Petitioner, with counsel Mr. Crawley-Woods, filed the instant Amended Petition for Writ of Habeas Corpus with Memorandum in support thereof and accompanying Losh list. Petition, 1/10/14; Checklist of Grounds for Post-Conviction Habeas Corpus Relief, 1/10/14.

51. The Respondent was ordered to file a response to said Petition for the court's consideration. Order for Respondent to Respond to Amended Petition, 1/14/14.

52. The Court entered a scheduling order allowing Petitioner to file a rebuttal memorandum if desired. Trial Court Rule 22 Scheduling Order, 6/16/14.

12

## CONCLUSIONS OF LAW

1. A habeas corpus procedure is "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." State ex rel. Harrison v. Coiner, 154 W.Va. 467, 176 S.E.2d 677 (1970); W. Va. Code § 53-4A-1(a).

2. A convicted criminal has the right to one omnibus post-conviction habeas proceeding at which he may raise any collateral issues which have not previously been fully and fairly litigated. Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606, 609 (1981).

3. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), cert. den., 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 9, State ex rel. Azeez v. Mangum, 195 W. Va. 163, 465 S.E.2d 163 (1995); Syl. Pt., State ex rel. Phillips v. Legursky, 187 W. Va. 607, 420 S.E.2d 743 (1992).

4. "There is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." Syl. Pt. 2, State ex rel. Scott v. Boles, 150 W. Va. 453, 147 S.E.2d 486 (1966); State ex rel. Massey v. Boles, 149 W. Va. 292, 140 S.E.2d 608 (1965); Syl. Pt. 1, State ex rel. Ashworth v. Boles, 148 W. Va. 13, 132 S.E.2d 634 (1963).

5. Due to this strong presumption of regularity, statutory law requires that a petition for writ of habeas corpus ad subjiciendum shall "specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based[.]" W. Va. Code § 53-4A-2.

13

6. The reviewing court shall refuse, by written order, to grant a writ of habeas corpus if the petition, along with the record from the proceeding resulting in the conviction and the record from any proceeding wherein the petitioner sought relief from the conviction show that the petitioner is entitled to no relief or that the contentions have been previously adjudicated or waived. W. Va. Code § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49, 54 (2004); Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979).

7. In order to prevail on an issue previously adjudicated during the criminal proceeding, the petitioner must prove that the trial court's ruling is "clearly wrong". W. Va. Code § 53-4A-1(b).

8. Grounds not raised by a petitioner in his petition are waived. Losh v. McKenzie, 166 W. Va. 762, 277 S.E.2d 606, 612 (1981); *see also:* State ex rel. Farmer v. Trent, 206 W. Va. 231, 523 S.E.2d 547 (1999), at 550, n. 9.

9. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived, Syl. Pts. 1 & 2, Ford v. Coiner, 156 W. Va. 362, 196 S.E.2d 91 (1972).

10. The reviewing court has a mandatory statutory duty to enter an order denying the relief requested in a habeas petition if the record demonstrates that a habeas petitioner is entitled to no relief.

> If the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence, or the record or records in a proceeding or proceedings of a prior petition or petitions filed under the provisions of this article, or the record or records in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced

14

have been previously and finally adjudicated, or waived, the court shall enter an order denying the relief sought.

W. Va. Code § 53-4A-7(a); W. Va. Code § 53-4A-3(a); Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979). Furthermore, W. Va. Code § 53-4A-1, *et seq.*, "contemplates the exercise of discretion by the court", authorizing even the denial of a writ without hearing or the appointment of counsel. Perdue v. Coiner, *supra.*

11. When denying or granting relief in a habeas corpus proceeding, the court must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. State ex rel. Watson v. Hill, 200 W. Va. 201, 488 S.E.2d 476 (1997).

## 1. The trial court properly imposed a life sentence pursuant to W.Va. Code §61-11-18 under the facts of this case.

12. W.Va. Code §61-11-18 governs, in part, recidivist proceedings and states:

> When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person **shall** be sentenced to be confined in the state correctional facility for life.

W.Va. Code § 61-11-18(c)(Emphasis added).

13. The plain language of the statute indicates that the court's imposition of a life sentence following a jury's determination that the Petitioner was twice previously convicted of qualifying predicate offenses is mandatory.

14. The West Virginia Supreme Court has found that

> "Where an accused is convicted of an offense punishable by confinement in the penitentiary and, after conviction but before sentencing, an information is filed against him setting forth one or more previous felony convictions, if the jury find or, after being duly cautioned, the accused acknowledges in open court that he is the same person named in the conviction or convictions set forth in the information, the court is without authority to impose any

15

sentence other than as prescribed in Code, 61-11-48, as amended."
Syllabus Point 3, <u>State ex rel. Cobb v. Boles</u>, 149 W.Va. 365, 141 S.E.2d 59 (1965).

Syl. Pt. 3, <u>State ex rel. Daye v. McBride</u>, 222 W. Va. 17, 658 S.E.2d 547 (2007), *certiorari denied* 129 S.Ct. 131, 555 U.S. 858.

15. Petitioner was convicted of the felony offense of unlawful wounding on or about June 16, 2009. Tr. 6/16/09, 195; Order of Conviction Upon a Trial by Jury, 6/23/09. In advance of the sentencing hearing, the State filed a recidivist Information, alleging that the Petitioner was twice previously convicted of offenses for which a penalty of longer than one year could be imposed. Information, 8/6/09. A jury found that the Petitioner had been so previously convicted on or about September 29, 2009. Tr., 9/29/09, 200; Recidivist Conviction Order, 10/06/09. Therefore, the trial court correctly sentenced the Petitioner to mandatory life imprisonment pursuant to W.Va. Code §61-11-18. <u>State ex rel. Daye v. McBride</u>, *supra.*

16. Albeit, the West Virginia Supreme Court has articulated a standard of review for enhanced sentences imposed pursuant to W.Va. Code §61-11-18 that includes a proportionality analysis:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute. Syl.Pt. 7, <u>State v. Beck</u>, 167 W.Va. 830, 286 S.E.2d 234 (1981)." Syllabus Point 2, <u>State v. Housden</u>, 184 W.Va. 171, 399 S.E.2d 882 (1990).

16

Syl. Pt. 4, State v. Wyne, 194 W.Va. 315, 460 S.E.2d 450 (1995).

17. The Petitioner's conviction was for the felony offense of Unlawful Assault. A jury determined that the Petitioner had previously been convicted and sentenced for the felony offenses of Unlawful Assault and being a Felon in Possession of a Firearm. These convictions are crimes of violence or, in the case of the firearms charge, anticipated violence.

18. The "triggering" conviction for imposition of a life sentence upon the Petitioner is his last conviction, a crime of violence involving a stabbing with a knife, the Petitioner's second unlawful wounding conviction. Emphasis is given to the nature of the final offense which triggers the recidivist life sentence. State v. Davis, 189 W. Va. 59, 427 S.E.2d 754 (1993).

19. [S]ole emphasis cannot be placed on the character of the final felony, but it is entitled to closer scrutiny that the other convictions since it provides the ultimate nexus to the sentence." State v. Deal, 178 W. Va. 142, 147, 358 S.E.2d 226, 231 (1987), *quoting* Wanstreet v. Bordenkircher, 166 W. Va. 523, 534, 276 S.E.2d 205, 212 (1981).

20. Under the United States Constitution, the Petitioner's prior convictions do not even have to amount to a crime of violence in order for the habitual offender statute to apply. In Ewing v. California, 538 U.S. 11, 124 S. Ct. 1179 (2003), the United States Supreme Court found that the Eighth Amendment does not require strict proportionality between crime and sentence but merely forbids only extreme sentences that are grossly disproportionate to the crime. In Ewing, the Court specifically found that sentencing the defendant to a term of twenty-five years to life for the theft of three golf clubs, pursuant to California's three strikes law, was not grossly disproportionate and thus did not violate the Eight Amendment's prohibition against cruel and unusual punishment. Id. The Court

17

found that the sentence was justified by the state's public safety interest in incapacitating and deterring recidivist felons. Id.[3]

21. The Petitioner did not steal golf clubs. The Petitioner has exhibited a consistent pattern of violence. The Petitioner's convictions for felony crimes of violence, and his propensity for violence, clearly establish the proportionality of the life sentence imposed upon him pursuant to W. Va. Code 61-11-18. State v. Wyne, *supra*.

22. The Petitioner is entitled to no relief on his claim that the trial court erred in finding that it was bound by W.Va. Code §61-11-18 under the facts and circumstances of this case; furthermore, in reviewing the mandatory imposition of the life sentence, there is no disproportionality based upon the Petitioner's criminal history.

**2. Petitioner's convictions for unlawful assault and federal conviction for felon in possession of a firearm are valid and sufficient convictions to support a recidivist action and life sentence under West Virginia law.**

**i. Prior Appeal.**

23. Petitioner incorporates by reference arguments and errors alleged in his previous Petition for Appeal, attached as exhibit G in the instant Petition for Writ of Habeas Corpus, pages 19-40. Upon full review thereof, the record pertaining thereto, and all applicable law, the Court finds that the Petitioner is not entitled to relief on any of these grounds.

---

[3] Similarly, the primary public policy interests underlying the West Virginia recidivist statute is to deter felony offenders, meaning persons who have been convicted and sentenced previously on penitentiary sentences, who have not conformed their conduct to the bounds of the law and who have persisted in criminality from committing subsequent felony offenses and to protect society from habitual criminals. See Moore v. Coiner, 303 F.Supp. 185 (1969); State ex rel. Appleby v. Recht, 213 W.Va. 503, 583 S.E.2d 800, (2002), cert. denied 539 U.S. 948, 123 S.Ct. 2618, 156 L.Ed.2d 638; State ex rel. Chadwell v. Duncil, 196 W.Va. 643, 474 S.E.2d 573 (1996); State v. Jones, 187 W.Va. 600, 420 S.E.2d 736 (1992); State v. McMannis, 161 W.Va. 437, 242 S.E.2d 571 (1978).

18

**A.** **The trial court properly denied, consistent with *Georgia v. Randolph,* 547 U.S. 103 (2006), the Petitioner's motion to suppress the seizure of his backpack from the kitchen sink cabinet at the residence of Belinda Riley.**

24. Petitioner alleges that the triggering conviction for the 2009 unlawful assault was constitutionally flawed because the trial court denied his motion to suppress evidence found within the Riley home. However, the Petitioner fails to show that the trial court improperly denied the Petitioner's Motion to Suppress the search and seizure of Petitioner's backpack. There was no evidence presented to the trial court that the Petitioner was a co-tenant or resident of Ms. Riley's apartment. The victim, Mr. Jordan, was staying at the apartment at the time. The Petitioner would simply "come over" to visit Ms. Riley.

25. The United States Supreme Court addressed consent to search a residence where there are more than one resident, holding that either resident may consent, but that the police may not search in the face of an objection by the other resident then present. Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515 (2006). Nor may the police remove the potentially objecting other resident specifically to avoid a possible objection. Id.

26. Randolph does not apply to the case *sub judice.* First, there was no evidence presented that the Petitioner was a tenant. Patrolman Jones, the only witness to testify at the pretrial, testified that he was told by Ms. Riley that she was the primary resident there with her child and that Mr. Jordan (the victim) was staying there. 6/15/09 Tr., 18. Regarding the Petitioner, Patrolman Jones testified that Ms. Riley told him that he comes from time to time, he stays a day or two and then leaves. Id. at 18, 22. The trial court correctly concluded, after hearing the sole witness testify at the pretrial, that the Petitioner was no more than a casual visitor. Id. at 47.

19

27. At trial, Mr. Jordan testified that the Petitioner had moved out of Ms. Riley's apartment prior to Mr. Jordan moving in. 6/16/09 Tr., 83-84, The Petitioner would come over to visit, but his stuff was moved out before Mr. Jordan moved in. Id. at 84. Even Ms. Riley herself testified that the Petitioner was living down the block, but would come by to visit. Id. at 116. Based on the facts presented at trial, the Petitioner was nothing more than a casual visitor at Ms. Riley's home. Thus, he was not a "tenant," as is required under Randolph, and his consent to search the apartment was not required. Ms. Riley's consent alone was sufficient. Nor is there any legitimate evidence or argument that Petitioner had a reasonable expectation of privacy under a kitchen sink in another's home.

28. Secondly, this case can be distinguished from Randolph because even if the Petitioner was a tenant, he did not refuse to permit entry. In Randolph, the defendant refused consent to search and the police searched the premises based on a co-tenant's consent. Here, the actual resident, Ms. Riley, indicated to officers that she was fearful of the Petitioner and asked to speak with them outside his presence. She then gave consent and demonstrated where the bag with the knives was located hidden under her kitchen sink. Petitioner never refused to permit entry to the premises. There was no evidence presented at trial or pretrial to suggest that he would have objected to permitting entry to the premises. Nor was there evidence presented that the police officers purposefully removed the Petitioner from the premises for the purpose of avoiding a potential refusal to consent to a search. There is simply no evidence that the police took the Petitioner away from the premises in order to avoid his objection to a search. 6/15/09 Tr., 49.

20

29. In short, the trial court acted within its lawful authority under <u>Randolph</u> in denying the Petitioner's Motion to Suppress. The Petitioner was not a tenant or resident at Ms. Riley's apartment and therefore had no right to deny consent to search the apartment. Furthermore, there is no evidence in the Record to suggest that the Petitioner would have objected to a search of the apartment and there is also no evidence on the Record that the Petitioner was purposefully taken away from the scene by the police because they did not want to ask his consent to search. Therefore, the trial court properly denied the Petitioner's Motion to Suppress. Where there is no error, the court in a habeas corpus review cannot find that the conviction was constitutionally flawed. Accordingly this ground does not support the instant petition.

> **B.**  **The trial court properly refused to give Petitioner's proposed jury instruction no. 2, which would have instructed the jury to give care and caution to the uncorroborated testimony of the victim.**

30. Petitioner argues that the victim's testimony was uncorroborated and thus he was entitled to an instruction that would have advised the jury to give care and caution to such uncorroborated testimony. However, this reasoning is flawed.

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

21

Syl. Pt. 4, State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995).

31. The trial court properly refused the following Petitioner's proposed instruction that the jury consider the victim's testimony with care and caution.

32. Petitioner erroneously cites State v. Davis, 180 W. Va. 357, 376 S.E.2d 563 (1988). "Where the testimony of the victim of a sexual offense is corroborated to some degree, it is not reversible error to refuse a cautionary instruction that informs the jury that they should view such testimony with care and caution." Id. However, the case *sub judice* is not a case of sexual violence, but a case of personal violence.

34. In the case *sub judice*, the trial court specifically ruled that the requested instruction was not appropriate since there was corroborating evidence from Ms. Riley of the victim's testimony. 6/16/09 Tr., 149. This corroborating evidence came from Ms. Riley's testimony wherein she stated that she saw contact from the Petitioner to Mr. Jordan. Id. The trial court found that this testimony corroborated the fact that there was contact. There was further corroborating evidence that a trail of blood led from the site of the offense to the Martinsburg City Police Department. Id.

35. Moreover, the cautionary instruction is generally directed to issues of identification. Mr. Jordan well knew his assailant, the Petitioner herein. The trial court did not abuse its discretion in refusing the instruction. State v. Hinkle, *supra*; State v. Davis, *supra*.

36. Further, looking at the trial court's instruction as a whole, it properly informs the jury as to their duties, the elements of the offense charged and those of the agreed upon lesser included offenses, and the standard of proof, beyond a reasonable doubt.

22

Overall, it is a correct statement of law, supported by the evidence adduced at trial. State v. Guthrie, *supra*.

37. Accordingly, where there is no error the Court cannot find a ground of constitutional violation to sustain a petition for writ of habeas corpus. The Record is plain that the Petitioner is entitled to no relief on this claim.

> **C.** **The trial court properly denied the Petitioner's motion for judgment of acquittal at the close of the State's case-in-chief, finding that there was sufficient evidence upon which the jury could base its verdict of guilt.**

38. Petitioner asserts that the evidence did not support a verdict of guilt and therefore the court should have granted his Motion for Judgment of Acquittal or, in the alternative, that the jury verdict was contrary to the evidence provided.

39. In a habeas corpus proceeding, the Petitioner bears the heavy burden of proving that the underlying proceeding was flawed, rising to the level of a constitutional violation. Here, Petitioner cannot meet that burden.

40. W. Va. Code § 61-2-9(a) states:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

23

41. The evidence presented to the jury clearly shows that the victim, Mr. Jordan, ran into the police station bleeding profusely from a stab wound and exclaimed that he had just been stabbed by the Petitioner. Ms. Riley testified that she saw the Petitioner make contact with the victim shortly before the victim departed on foot for the police station. A blood trail led all the way from Ms. Riley's residence to the police station. The Petitioner was reported to have said the victim got what he deserved after the victim acted out upon discovering the Petitioner having sex with Ms. Riley.

42. Granting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, this evidence was sufficient evidence to satisfy all elements of the crime of unlawful wounding in violation of W.Va. Code § 61-2-9(a) from which the jury could have found and did find guilt beyond a reasonable doubt. State v. Guthrie, *supra;* State v. Miller, *supra.*

43. As such, Petitioner cannot show that his constitutional rights were violated when the court denied his motion for judgment of acquittal or when the jury found him guilty in alignment with the evidence presented.

### D. There is no cumulative error when the Petitioner proves no single error.

44. Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.

Syl. Pt. 14, State v. George W.H., 190 W.Va. 558, 439 S.E.2d 423 (1993); Syl. Pt. 5, State v. Smith, 156 W.Va. 385, 193 S.E.2d 550 (1972).

45. However, if this Court finds no error in this case, the cumulative error doctrine has no application. State v. Knuckles, 196 W.Va. 416, 426, 473 S.E.2d 131, 141 (1996).

24

Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors. Id.

46. As discussed herein, the trial court did not abuse its discretion and there was no error, either individually or cumulatively, that prevented the Petitioner from receiving a fair trial. State v. Knuckles, *supra*.

E. **The trial court properly denied the Petitioner's motion to dismiss the recidivist information on proportionality grounds.**

47. Petitioner's prior appeal also alleged that the life sentence was inappropriate on the grounds of proportionality. For those same reasons set forth in section one (1.) above, the Petitioner is not entitled to relief on this ground.

F. **The trial court properly allowed the State to introduce identification and timeframe evidence in the Petitioner's recidivist trial**

48. Petitioner alleges the trial court committed plain and prejudicial error by allowing "irrelevant and prejudicial evidence" in his recidivist proceeding. However, a review of the record reveals that the evidence presented was properly admitted.

49. The general standard for admissibility of evidence is a discretionary standard:

> 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' State v. Louk, W. Va., 301 S.E.2d 596, 599 (1983)." Syl. pt. 2, State v. Peyatt, *W*. Va. ,315 S.E.2d 574 (1983).

Syl. Pt. 4, State v. Farmer, 185 W. Va. 232, 406 S.E.2d 458 (1991).

50. The general standard for admitting identification evidence is:

> The touchstone for admitting any out-of-court identifications is the reliability of the identification, considering the length of time since the crime, the level of certainty given by the victim, the

25

opportunity during the crime to observe the trait in question, and the degree of attention to the trait during the crime.

Syl. Pt. 5, State v. Woodall, 182 W.Va. 15, 385 S.E.2d 253 (1989).

51. The West Virginia Supreme Court has also established the following standards of proof in a recidivist proceeding brought pursuant to W. Va. Code 61-11-18 and 19:

Where issue of identity is contested in recidivist proceeding, state must bear burden of proving identity beyond a reasonable doubt.

Wanstreet v. Bordenkircher, *supra*, 166 W.Va. 523, 276 S.E.2d 205 (1981); State v. Vance, 164 W. Va. 216, 262 S.E.2d 423 (1980).

Before trial court may impose mandatory life sentence under habitual criminal statute, state must prove beyond a reasonable doubt that prior convictions, except the first offense and conviction, were for offenses committed after each preceding conviction and sentence; this requires a showing that second conviction for a penitentiary offense was for an offense committed after first conviction and sentence on a penitentiary offense and that principal penitentiary offense was committed after second conviction and sentence on a penitentiary offense.

State v. McMannis, 161 W.Va. 437, 242 S.E.2d 571 (1981).

52. As noted above, in a life sentence recidivist proceeding the State is required to prove beyond a reasonable doubt three matters: 1) identity; 2) that there was both a conviction *and* sentence imposed preceding the commission of the second offense; and 3) that there was both a conviction *and* sentence imposed preceding the commission of the instant offense.

53. In the case *sub judice*, the State presented evidence linking the Petitioner's fingerprints to the 1987 felony Unlawful Assault arrest, the 2001 felony Felon in Possession of a Firearm arrest, and the triggering felony Unlawful Assault arrest. The

26

State presented expert fingerprint evidence identifying all three fingerprint cards as having been made by the same person. The State presented evidence from arresting officers identifying the Petitioner as the person that they arrested in the Felon in Possession case and the instant Unlawful Assault case; some of this testimony necessitated greater detail to ensure the reliability of the identification evidence under Woodall, *supra*.

54. The State presented evidence to demonstrate that the Petitioner was both convicted and sentenced prior to each of the next ensuing offenses pursuant to McMannis, *supra*.

55. The Petitioner fails to demonstrate that the trial court abused its discretion in admitting the evidence presented by the State. State v. Farmer, *supra*. Accordingly, the instant Petition cannot be sustained on this ground.

### G. The trial court properly refused to give a cautionary W.V.R.E.404(b) collateral act instruction in the Petitioner's recidivist trial when no Rule 404(b) evidence was presented.

56. In subsection G of the Petitioner's prior appeal, reasserted by reference in the instant case, Petitioner alleges that the trial court committed plain and prejudicial error by not issuing a cautionary collateral act instruction to the jury during the recidivist hearing, citing State v. McGinnis, 193 W. Va. 147, 455 S.E.2d 516 (1994).

57. The Petitioner plainly misconstrues the application of W.V.R.E. 404(b) and the holding of State v. McGinnis.

58. In his recidivist trial, the Petitioner was already convicted, by a separate jury, of the instant felony Unlawful Assault. The Petitioner was also previously convicted, the State alleged, of two prior qualifying offenses. The jury for the recidivist trial was not

27

considering the Petitioner's guilt for any offense. Their limited role was simply to determine whether the Petitioner was the same person who had previously been convicted of two qualifying offenses.

59. The State was not presenting evidence of the Petitioner's other bad acts under W.V.R.E. 404(b) to demonstrate permissible inferences that would go to the Petitioner's guilt on an offense for which he is presumed innocent. Rather, the State only presented evidence to the jury in the recidivist trial to meet its burden of proving beyond a reasonable doubt that the Petitioner, to whom no presumption of innocence then applied, was the person that was already convicted of other offenses.

60. As such, no McGinnis cautionary instruction was required, and the Petitioner thus fails to demonstrate that the trial court abused its discretion refusing a cautionary instruction. State v. McGinnis, *supra*.

**H.    The trial court properly denied the Petitioner's collateral attack on his prior Federal conviction for Felon in Possession of a Firearm.**

61. Petitioner alleges in his prior petition for appeal, incorporated by reference, that his second felony offense was a void conviction because he was denied effective assistance of counsel therein.

62. In Housden v. Leverette, 161 W. Va. 324, 241 S.E.2d 810 (1978), the Supreme Court of Appeals of West Virginia, quoting Syl. pt. 25, State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974), held that a "trial court lacks jurisdiction to enter a valid judgment of conviction against an accused who was denied effective assistance of counsel and a judgment so entered is void." Accordingly, the Court found that because the judgment was void, it could not serve as a foundation case for the habitual offender statute. Id.

28

63. However, Housden fell into a narrow set of significant facts that placed petitioner within a procedural rule that entitled the petitioner to a benefit of a presumption of ineffective assistance of counsel.

> [O]n April 23, 1962, [the petitioner] was transported from the West Virginia Penitentiary at Moundsville to Jefferson County to stand trial on that charge, and on the same day he was provided with appointed counsel to represent him; on the following day, April 24, 1962, petitioner plead guilty to the original charge of malicious wounding, was sentenced according to law, and was transported and arrived back at the penitentiary at Moundsville on that same day.

Housden v. Leverette, 161 W. Va. at 326.

64. The Court then adopted a

> well-established rule in the Fourth Circuit that an interval of one day or less between the appointment of counsel and trial or the entry of a guilty plea raises a rebuttable presumption that the defendant was denied effective assistance of counsel and shifts the burden of persuasion to the state.

Id.

65. In Housden, there was a presumption of ineffective assistance of counsel due to the extremely truncated case timeline. In the instant case there is no such set of facts.

66. Petitioner is not entitled to such a presumption and in order to demonstrate that the underlying conviction was void would necessarily need to carry the heavy burden of showing ineffective assistance of counsel before this Court could consider a collateral attack on a recidivist foundation case.

67. When reviewing the merits of a petitioner's contention, the Court recognizes that "there is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." Syl Pt. 2, State ex rel. Scott v. Boles, 150 W. Va. 453 (1966). Furthermore, specificity is required in

29

habeas pleadings, thus a mere recitation of a ground for relief without detailed factual support will not justify the issuance of a writ or the holding of a hearing. W. Va. Code § 53-4A-2; Losh v. McKenzie, 166 W. Va. 762, 771 (1981). "When a circuit court, in its discretion, chooses to dismiss a habeas corpus allegation because the petition does not provide adequate facts to allow the circuit court to make a 'fair adjudication of the matter,' the dismissal is without prejudice." Markley v. Coleman, 215 W. Va. 729, 734 (2004), see R. Hab. Corp. 4(c). However, rather than dismissing without prejudice the court may "summarily deny unsupported claims that are randomly selected from the list of grounds," laid out in Losh v. McKenzie. Losh v. McKenzie, 166 W. Va. 762, 771 (1981); Markley v. Coleman, 215 W. Va. 729, 733 (2004).

68. This Court reviews claims of ineffective assistance of counsel under the following two-part test: whether

> (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 74 (1984); State v. Miller, 459 S.E.2d 114 (W.Va. 1995). Then, to determine whether performance was deficient,

> courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.

State v. Miller, 459 S.E.2d 114 (W.Va. 1995). Accordingly, petitioner has the burden of showing that no other reasonable attorney would have acted as his counsel did under the same circumstances. Id.

69. Here, Petitioner alleges that his second felony offense of being a prohibited person in possession of a firearm, in violation of Federal law, was void as his then attorney failed to pursue

30

the defense of restoration of the Petitioner's civil rights as evidenced by a document received by the Petitioner from the West Virginia Department of Corrections. Notably, Petitioner admits that an argument for mistake of law, similar to the allegedly neglected argument, was unsuccessful in the federal proceeding.

70. Petitioner fails to show that his counsel's performance was deficient. Petitioner complains that counsel failed to argue that his rights were restored by a Department of Corrections print out. However, the jury and the Court were clearly not convinced by Petitioner's very similar, but shrewder defense that he could not be held accountable for the infraction due to his mistake of law in misinterpreting the print out.

71. Further, defense counsel is entitled to make strategic decisions, including the tailoring of a defense theory. To assert every possible defense very often breaks down the fabric of the strongest theory, damages the defense's credibility, and distracts the fact finder.

72. Giving trial counsel's judgment the allotted "heavy measure of deference," this Court cannot second guess trial counsel's strategic decision in hindsight. Further, Petitioner has failed to show how the outcome of this case would have been different, but-for the actions of trial counsel.

73. Because Petitioner has failed to show how his trial counsel was ineffective, he is barred from asserting that his underlying federal conviction was void and thus cannot collaterally attack a foundation case in his recidivist hearing.

74. The State and trial court complied fully with the Petitioner's procedural rights guaranteed under West Virginia law as outlined in W.Va. Code §61-11-18 and 19 and applicable case law in the recidivist action.

31

**ii.** **The Petitioner is not entitled to relief on any of his allegations of ineffective assistance of counsel.**

75. Beyond the claim of ineffective assistance of counsel regarding Petitioner's counsel in the federal possession of a firearm foundation case, Petitioner alleges that counsel for his 2009 unlawful assault case was also ineffective.

76. The West Virginia Supreme Court of Appeals reiterated the standards necessary to prove ineffective assistance of counsel:

> 1. "In West Virginia Courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).
>
> 2. "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).
>
> 3. "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974).
>
> 4. "One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, one must prove the allegation by a preponderance of the evidence." Syl.

32

Pt. 22, <u>State v. Thomas</u>, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Syl Pt. 1-4, <u>State ex rel Kitchen v. Painter</u>, 226 W.Va. 278, 700 S.E.2d 489 (2010).

77. The Petitioner fails to meet either prong of the two-prong standard necessary to prove ineffective assistance claims pursuant to <u>Strickland v. Washington</u>, *supra.,* <u>State v. Miller</u>, *supra.,* <u>State ex rel. Kitchen v. Painter</u>, *supra.*

## A. The Petitioner's decision to remain silent.

78. The Petitioner's first allegation of ineffective assistance of counsel is that his defense counsel improperly pressured him into not testifying at the trial. However, the record is abundantly clear that it was the Petitioner's decision not to testify.

79. At the pretrial hearing on June 15, 2009, the trial court advised the Petitioner of his right to testify or not testify pursuant to <u>State v. Neuman</u>, 179 W.Va. 580, 371 S.E.2d 77 (1988).

> COURT: I also need to let you know that you can—you can testify on your own behalf or you cannot testify. That's your choice to make. Discuss it with Mr. Manford but it's your decision to make whichever way you want to go. No one can keep you from testifying if you so desire to testify. If you do testify, you're subject to cross examination and I will instruct the jury that you're a competent witness and they need to consider your testimony just like any other witness' testimony in deciding guilt or innocence. If you don't testify, then I will instruct the jury that they are to disregard from their consideration the fact that you did not testify. That shouldn't enter their deliberation whatsoever. You need to let me know through Mr. Manford before the close of your case that you do want to testify or I'm going to assume that you've waived your right to testify. Do you understand that?
>
> PETITIONER: Yes, sir, Your Honor.

Tr. 6/15/09, 65.

33

80. Additionally, the trial court again addressed with the Petitioner his rights pursuant to State v. Neuman, 179 W. Va. 580, 371 S.E.2d 77 (1988), following the State's case in chief. The court even allowed the Petitioner additional time to consult with counsel prior to indicating his decision to the court.

> COURT: Mr. Redman, yesterday we spoke about your right to testify and your right not to testify, and again, you know—do you want me to go over that again with you or are you pretty confident you understand everything?
>
> PETITIONER: Very confident I understand, Your Honor.
>
> COURT: Now, again, Mr. Manford have you all—I'm sure you and Mr. Redman have discussed whether or not he's going to testify.
>
> COUNSEL: Yes, Your Honor. Yesterday we tried to prepare him for testimony given we didn't know what was going to happen as far as how the evidence was going to come out. He's ready to go if he chooses to testify. I have explained to him all his rights under Neuman and I'm kind of waiting to find out what he wants to do.
>
> It's your day in court. The Judge wants to know, do you want to testify or not based upon everything we've talked about. It's your decision.
>
> COURT: Are you going to call any witnesses?
>
> COUNSEL: No, Your Honor.
>
> COURT: Now is the time to let me know. Have a seat. You and Mr. Manford discuss it.
>
> ...
>
> COURT: All right, Mr. Manford?
>
> COUNSEL: Yes, sir. I thank you Judge for that bit of time. We tried to analyze whether or not he needs to testify at this point in time strategically and after explaining, I think, all of the consequences and all of the possibilities as best I could with my experience I think Mr. Redman would like to stand

34

and—remain silent and not take the stand but I would ask you to inquire of him.

COURT: Is that correct, Mr. Redman?

PETITIONER: Yes, Your Honor.

Tr. 6/16/09, 146-147.

81. The record makes it abundantly clear that it was the Petitioner's decision not to testify. The court properly informed the Petitioner that no matter his counsel's advice and opinion, it was ultimately the Petitioner's decision. Likewise, Petitioner's counsel fully examined the issue with the Petitioner and even had the court directly inquire of the Petitioner as to his final decision, and the Petitioner indicated that it was his decision not to testify. Counsel's performance in this regard was not deficient. Strickland v. Washington, supra., State v. Miller, supra., State ex rel. Kitchen v. Painter, supra.

**B.     The Petitioner's claims regarding the witness Belinda Riley**

82. The Petitioner further alleges that his counsel was ineffective by failing to meet with Ms. Riley before trial and by not cross examining Ms. Riley at trial. However, the record is clear that defense counsel consulted with the Petitioner following the State's direct examination of Ms. Riley. Tr. 6/16/09, 122. After speaking with the Petitioner, defense counsel indicated that he had no questions for Ms. Riley. Id.

83. The Petitioner alleges, for the first time, in his habeas that Ms. Riley was the actual perpetrator of the crime against Mr. Jordan. However, Mr. Jordan clearly testified that the Petitioner was the person who stabbed him.

84. Furthermore, the Petitioner has not provided any evidence to support this allegation. On direct examination Ms. Riley testified that there was an altercation at her home involving the Petitioner and Mr. Jordan and that she observed contact between the

35

two men but that she did not see the Petitioner stab Mr. Jordan. There had been testimony in pretrial proceedings that following the incident Ms. Riley had asked officers to speak with her elsewhere because of her fear of the Petitioner on that particular evening. The State had not inquired about that fact on direct examination at trial. It is entirely conceivable that the Petitioner and his counsel believed Ms. Riley's testimony to be minimally inculpatory and did not want to further question her based on concerns that she may further discuss her feelings about and conflict with the Petitioner on that date. As noted in State v. Thomas, supra., where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused. Considering the factors presented, other reasonable lawyers in defense counsel's position would have done the same thing. In this regard, the Petitioner has failed to demonstrate that his counsel's performance was deficient. Strickland v. Washington, supra., State v. Miller, supra., State ex rel. Kitchen v. Painter, supra.

85. The Petitioner also fails to show a reasonable probability that, but for an error of counsel, the result of the proceedings would have been different since there is no reason to believe that had defense counsel questioned Ms. Riley she would have admitted to being the perpetrator or would have said anything exculpatory regarding the Petitioner. Id. As such, the Petitioner is not entitled to relief on this claim.

### C. The Petitioner's claims regarding jury instructions for lesser included offenses

86. The Petitioner next states that his representation did not qualify as effective assistance of counsel because his attorney failed to object to the offering of lesser

36

included offense instructions. The Court first notes that the Petitioner could have alleged error in the trial court's giving of lesser included offense instructions in his direct appeal to the West Virginia Supreme Court but he did not. Nor did the Petitioner allege that he received ineffective assistance of counsel from appellate counsel. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, *supra*.

87. However, even considering this allegation on its merits, the Petitioner is entitled to no relief. The Petitioner now states that he "wanted to take an 'all or nothing approach' on the malicious wounding charge and wanted his counsel to object to the inclusion of lesser included offense instructions. However, it is plain from the record that both the State and defense counsel requested lesser included offense instructions of both unlawful assault and of battery. Tr. 6/15/09, 65; Tr. 6/16/09, 148 (indicating the State and defense counsel "basically had the same instructions"), 150-151 (indication of defense instruction on battery), 152 (State and defense elemental instructions were "virtually identical"). It is also indicated on the record that defense counsel consulted with the Petitioner before agreeing to the changes to the court's finalized instructions. Id. at 154. It was again noted that there were no objections to the charge. Id. at 156-158. It is clear from the record that the Petitioner did not object to the inclusion of lesser included instructions.

88. However, even if the Petitioner actually did wish to take such an "all of nothing approach," no error resulted from his counsel's lack of objection. First, a request for lesser included offenses is one involving strategy, tactics and arguable courses of action that ordinarily should not be second guessed on review unless no reasonable attorney would have acted similarly. It is difficult if not impossible to argue that no

37

reasonable attorney would have requested lesser included offense instructions based upon the facts and circumstances of this case. Lesser included offense instructions "can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." State v. Wallace, 175 W. Va. 663, 667, fn. 6, 337 S.E.2d 321, 325 fn. 6 (1985), quoting Beck v. Alabama, 447 U.S. 625, 633, 100 S.Ct. 2382, 2387-88, 65 L.Ed.2d 392, 400 (1980).

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

State v. Wallace, 175 W. Va. 663, 667, fn. 6, 337 S.E.2d 321, 325 fn. 6 (1985), *quoting* Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 1997-98, 36 L.Ed.2d 844, 850 (1973). Therefore, counsel's performance in this regard was not deficient. Strickland v. Washington, *supra.*, State v. Miller, *supra.*, State ex rel. Kitchen v. Painter, *supra.*

89. Furthermore, the Petitioner also cannot demonstrate under this allegation that had his attorney objected, the outcome would have been different. This is because the State also requested the lesser included offense instructions.

> A defendant does not have the right to preclude the State from seeking a lesser included offense instruction where it is determined that the offense is legally lesser included and that such an instruction is warranted by the evidence.

Syl. Pt. 4, State v. Wallace, 175 W. Va. 663, 337 S.E.2d 321 (1985).

38

90. Under the facts and circumstances of this case as set forth above, defense counsel's objection would not have prevented the trial court from instructing the jury on the lesser included offenses as requested by the State. State v. Wallace, *supra.;* Strickland v. Washington, *supra.,* State v. Miller, *supra.,* State ex rel. Kitchen v. Painter, *supra.* For all these reasons, Petitioner is not entitled to relief on this ground.

### D. The Petitioner's allegations with regard to unrelated bar complaints of trial counsel

91. The Petitioner includes a paragraph stating that his defense counsel has had bar complaints filed against him and arguing that this fact supports his claims of ineffective assistance of counsel. Petitioner's habeas counsel properly noted that none of the complaints resulted in a formal statement of charges or appeared to be connected to matters brought forth herein.

92. The Petitioner fails to state how an attorney receiving an unrelated bar complaint lodged against him has any relevancy to the instant proceedings or to said attorney's performance during the course of the underlying proceedings. As such, this information is deemed by this Court to be irrelevant to the required inquiries regarding the performance of counsel during these trial proceedings under the standards laid out in State ex rel. Kitchen v. Painter, *supra.*

### iii. The Petitioner is not entitled to relief through a collateral attack of a prior Federal conviction.

93. In this section of the Petition for Writ of Habeas Corpus, Petitioner does not allege his counsel was constitutionally ineffective, but rather that his federal conviction should now be adjudged void because the Petitioner asserts that he violated the law due to his mistake of law. However this ground does not fall within the narrow set of issues

39

which can declare a prior conviction void for the purpose of disturbing a recidivism conviction.

94. Housden v. Leverette, *supra.*, offers only a narrow opportunity for declaring judgments void. In Housden, the Petitioner came within a procedural rule which entitled him to the benefit of the presumption of ineffective assistance of counsel because he was appointed an attorney and entered a guilty plea within 24 hours. "[B]ecause petitioner was denied effective assistance of counsel when he entered his guilty plea" the trial court lacked jurisdiction to enter valid judgment of conviction "and such judgment as entered was void and could not serve as foundation for application of habitual offender statute." Petitioner's set of facts do not fall within any presumption of ineffective assistance of counsel.

95. Further, an asserted mistake of law does not deny a court jurisdiction. Petitioner argues that his mistake of law makes the Federal conviction void, comparing his case to the facts within Lambert v. People of the State of California, 355 U.S. 225, 78 S. Ct. 240 (1957). In Lambert, the Supreme Court held that a Los Angeles felon registration municipal ordinance, as applied in Lambert's case, violated the Due Process requirements of the 14th amendment. The Court found the requirement unconstitutional because it made a "wholly passive" act, that is the "mere failure to register," a criminal act without requiring a showing of actual knowledge or the probability of such knowledge. The Court clarified that lawmakers have wide latitude to declare an offense even while excluding "elements of knowledge and diligence from its definition" and that many such laws, like licensing statutes for business regulations, are well within that scope because the act regulates an action. Lambert v. California, 355 U.S. at 228.

40

96. Lambert applies only to regulation of non-actions. Here, on the other hand, Petitioner actively violated a law by engaging in a prohibited activity. Accordingly, this law was not unconstitutional and the prosecution was not required to prove that the Petitioner participated in a prohibited act without mistake of law. As such, Petitioner's federal conviction is not void, but rather valid and sufficient to support a recidivism proceeding.

97. Nor was the State required to re-prove the underling charges of each conviction beyond a reasonable doubt.

98. The case of State ex rel. Appleby v. Recht, 213 W. Va. 503, 583 S.E.2d 800 (2002) provides the needed guidance for this issue. In Appleby, the defendant sought a writ of prohibition preventing the State from proceeding to try him as a recidivist offender upon his conviction of driving under the influence, third offense and recidivist information alleging a predicate felony conviction of unlawful assault and two predicate felony convictions for DUI, third offense. Along with other allegations in support of his petition, Appleby argued that the facts of the predicate felonies must be proven to the jury beyond a reasonable doubt.

99. In considering the extent to which the predicate felonies be examined in the context of a recidivist proceeding, the West Virginia Supreme Court reasoned as follows:

> The prior convictions have already been proven to a jury beyond a reasonable doubt (or such requirements have been waived by the defendant). *See,* Apprendi v. New Jersey, 530 U.S. 466, 496, 120 S.Ct. 2348, 2366, 147 L.Ed.2d 435, 458-59 (2000)("(There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a

41

reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof."). The United States Supreme Court applied similar rationale in two cases post-dating Apprendi, and concluded that, with the exception of denial of counsel claims, petitioners seeking post-conviction relief cannot challenge the validity of any predicate felonies. *See, e.g.,* Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04, 121 S.Ct. 1567, 1574, 149 L.Ed.2d 608, 618 (2001) (citations omitted) ("[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under [28 U.S.C.] § 2254 on the ground that the prior conviction was unconstitutionally obtained."); Daniels v. United States, 532 U.S. 374, 382, 121 S.Ct. 1578, 1587, 149 L.Ed.2d 590, 600 (2001) (similar-prior enhancement convictions may not be contested under federal motion to vacate sentence, 28 U.S.C. § 2255).

The United States Supreme Court has said that states may not impose greater protections as a matter *of federal* constitutional law when the Supreme Court has specifically refrained from imposing them, but may do so as a matter of *state* law. *See* Arkansas v. Sullivan, 532 U.S. 769, 772, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994, 999 (2001) (per curium) (citing Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575-76 (1975)). The Supreme Court has spoken as a matter of federal constitutional law and concluded that there is no requirement that the existence of predicate convictions be submitted to a jury and proved beyond a reasonable doubt. We cannot, as a matter of federal constitutional law, adopt such a rule.

We further recognize, however, that Mr. Appleby does have a significant number of procedural rights as a matter of *state* law in a recidivist proceeding. *See* Wanstreet v. Bordenkircher, 166 W.Va. 523, 527, 276 S.E.2d 205, 209 (1981) (noting the "strict procedural standards" applicable to a recidivist proceeding). For example, under state law, a recidivist defendant has the right to require the State to prove to a jury beyond a reasonable doubt the fact of prior conviction, as well as the identity of the defendant as the person convicted of the predicate felonies and that the

prior convictions occurred one after the other. Id. at 526-27, 276
S.E.2d at 208. Thus, we deny the writ.

Appleby v. Recht, 213 W. Va. at 513-14,

100.   The cases the petitioner cites to in his instant habeas as well as those cited in his former appeal, State v. Barlow, 181 W. Va. 565, 383 S.E.2d 530 (1989); State v. Cain, 178 W. Va. 353, 359 S.E.2d 581 (1987); and Housden v. Leverette, 161 W. Va. 324, 241 S.E.2d 810 (1978), examine the narrow issue of denial of counsel or a statute which seeks to criminalize non-action. Petitioner fails to cite any authority which would accurately apply to the facts at hand.

101.   The Petitioner's complaints regarding his 2001 federal felony conviction do not fall within these narrow exceptions as recognized by federal and state precedent.

102.   The Petitioner instead seeks to assert a defense to the 2001 charge, which, as the Petitioner admits in his brief, was unsuccessful in the federal proceeding. (See Amended Petition for Writ of Habeas Corpus, 12, fn. 3.) The record reflects that Petitioner was represented by counsel Barry Beck, Esq. throughout his federal proceeding, that Mr. Beck filed a "Motion to Dismiss and for Leave to File Additional Evidence and Argument in Support of Motion to Dismiss," and that said motion was denied by that court. Motion to Continue Trial, 9/28/09. The record further reflects that the Petitioner received a penitentiary sentence of ninety-six (96) months with the United States Bureau of Prisons regarding said conviction. Id. There is no evidence that the Petitioner ever attempted an appeal or collateral attack of that conviction and sentence while he was in federal custody or, even if attempted, was successful in such endeavors. Therefore, the conviction should be regarded as conclusively valid and not subject to challenge through this proceeding.

43

103. The State and trial court complied fully with the Petitioner's procedural rights guaranteed under West Virginia law as outlined in W.Va. Code §61-11-18 and 19 and applicable case law in the recidivist action.

**3. The Petitioner is not entitled to relief on any of the grounds he expressly waived.**

104. The Petitioner expressly waived on his filed, signed and verified Losh list the following grounds: 3-10, 12-13, 15-19, 24-32, 34-40, 43-44, 46-49, 52. Checklist of Grounds for post-Conviction Habeas Corpus Relief, 1/10/141 Losh v. McKenzie, *supra*. The record is plain that the Petitioner is not entitled to any relief on the above expressly waived grounds. W. Va. Code § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra*.

**4. The Petitioner is not entitled to relief on any ground not waived but for which he makes no allegation.**

105. Grounds not raised by a petitioner in his petition are waived. Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606, 612 (1981); *see also:* State ex rel. Farmer v. Trent, 206 W. Va. 231, 523 S.E.2d 547 (1999), at 550, n. 9. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, 156 W. Va. 362, 196 S.E.2d 91 (1972).

106. The Petitioner offered no factual basis or legal basis whatsoever for the following grounds that were not waived on his Losh list:

1- Trial court lacked jurisdiction
2- Statute under which conviction obtained is unconstitutional
11- Denial of counsel (and insofar as this allegation relates to the Petitioner's allegations of ineffective assistance of counsel, it is discussed above)
14- Consecutive sentences for the same transaction (and insofar as this allegation related to the Petitioner's allegations of disproportionate and excessive sentence, it is discussed above)
20- Information in presentence report erroneous
22- Double jeopardy

44

23- Irregularities in arrest
33- Refusal of continuance
53- Amount of time served on sentence, credit for time served

Checklist of Grounds for Post-Conviction Habeas Corpus Relief, 1/10/14. The record is plain that the Petitioner is not entitled to any relief on this unwaived but unsupported ground. W. Va. Code § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra.*

## CONCLUSION

For each of the reasons detailed above, the Petitioner fails to allege any set of facts in this habeas corpus proceeding upon which relief may be granted. No evidentiary hearing is required for the Court to make its findings and conclusions because all of the matters alleged can readily be determined by reference to the record in State v. Charles Redman; Case No.: 09-F-53.

ACCORDINGLY, the Amended Petition for Writ of Habeas Corpus is DENIED.

The Clerk shall enter this Order as of the date first noted above and shall transmit attested copies to all counsel of record. The Clerk shall further remove this case from the active docket of the Court and place it among matters ended.

ENTER this ___ day of ____ 2014.

_____
MICHAEL D. LORENSEN, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT

A TRUE COPY
ATTEST
    Virginia M. Sine
    Clerk Circuit Court
By: _____
    Deputy Clerk

45